## CONTRACT TRANSFERRING RIGHTS UNDER A PATENT.

[Circuit Court of Summit County.]

CHARLES L. DOUGLASS ET AL v. J. B. CAMPBELL, RECEIVER.

Decided, December, 1902.

*Patents—Assignment of, License for Use of, Grant of—Contract Conveying Interest in Patent—Word "License" Used in the Contract, But by Its Terms the Interest Conveyed Was an Assignment—Implied Terms of Contract.*

1. Where a contract transferring a right or interest under a patent makes use of the word "license" in describing the interest transferred, but by the terms of the contract all interest in the patent was transferred, the contract will be construed as an "assignment" of the patent.
2. Parol evidence can not be used for the purpose of either reforming or construing such a contract.

CALDWELL, J.; HALE, J., and HULL, J., concur.

Heard on appeal.

The plaintiffs in this case, on March 15, 1894, were the owners of a certain patent pertaining to tubular steam boilers, and, on that day, as such owners, they entered into a contract with The J. C. McNeil Company, a corporation under the laws of Ohio, having its place of business at Akron, Ohio, which contract reads as follows:

"This memorandum of agreement made by and between the several owners in common of letters patent of the United States No. 478,690, dated July 12, 1892, issued to Herbert F. Cook, assignor, for an improvement in steam boilers, namely, C. L. Douglass, C. B. Squire and Mary C. Bingham, owners of one-half of said interest; Herbert F. Cook, C. N. Schmick, S. E. Welker and J. H. King, who are respective owners of one-eighth interest each under the said patent, parties of the first part, and The J. C. McNeil Company, a corporation organized under the laws of the state of Ohio and having its office and place of business at Akron, in the said state, party of the second part, hereinafter called the McNeil Company, made at Cleveland, Ohio, this fifteenth day of March, 1894.

"Witnesseth: That the parties of the first part have licensed and do hereby license and empower the party of the second

part to manufacture, sell and use the steam boiler described in letters patent of the United States No. 478,690, dated July 12, 1892, and issued to Herbert F. Cook, assignor, and by him assigned to the said several parties of the first part, during the life and continuance of the said letters patent and during the life and continuance of any reissue of said letters patent. This license shall also be construed to cover any and all improvements in the said steam boiler which may be hereafter made and described and patented to the said parties of the first part, or any of them, during the life of any patent for said improvements issued by the United States of America, or any reissues thereof for any such improvements, devices or inventions as may be acquired by any of the said parties of the first part. The license hereby granted to the party of the second part by the parties of the first part, is an exclusive license to manufacture, sell and use the said boiler and any and all improvements described in the said letters patent hereinbefore recited, and also any and all improvements therein for which patents may be issued to any one of the said parties, or acquired by them, throughout the United States of America, excepting the states of California, Oregon and Washington, during the term and period covered by said letters patent No. 478,690, or during the life and continuance of any letters patent which may hereafter be secured or owned by the parties of the first part or either of them upon any improvements, devices or inventions to be attached to or make a part of said steam boiler described in said letters patent No. 478,690.

"2. In consideration of the said foregoing exclusive license granted by the parties of the first part to the party of the second part to manufacture and sell boilers and improvements therein described in letters patent of the United States No. 478,690, and any reissue thereof or improvements thereon, the said party of the second part hereby agrees with the parties of the first part to pay to the said parties of the first part the sum of $1.00 per horse-power for every boiler manufactured and sold by said party of the second part under letters patent of the United States No. 478,690, provided said boiler is of the capacity of one hundred horse-power or more; upon boilers having a capacity of less than one hundred horse-power and equal to or greater than seventy-five horse-power, the royalty thereon shall be seventy-five cents per horse-power; upon all and any boilers manufactured and sold by said party of the second part embodying the said improvements whose capacity is less than seventy-five horse-power, the license fee or royalty to be paid therefor by said second party shall be fifty cents per horse-power.

"It is expressly understood and agreed between the parties hereto that in case the party of the second part should use any devices covered by letters patent of the United States for improvements in the said boiler described in said letters patent No. 478,690, which may hereafter be secured or owned by said parties of the first part or any of them, the party of the second part shall not pay any other royalty than that described in and provided for by the terms of this paragraph.

"3. The party of the second part agrees with the parties of the first part that it will account and pay over to the parties of the first part, semi-annually, on the first day of October and the first day of April in each year during the life of letters patent No. 478,690, and so long as the party of the second part manufactures and sells and uses boilers thereunder, for royalty on all boilers manufactured and sold and delivered by the said party of the second part during the six months immediately preceding the first day of September and the first day of March respectively in each year; that is to say, the said party of the second part shall on the first day of April in each year account for and pay royalties on all boilers which have been manufactured and sold and delivered during the six months preceding the first day of March of said year and on the first day of October, shall account and pay over to said parties of the first part all royalties due for the six months immediately preceding the first day of September in said year. Until further notified by any of the several parties in interest, all of the said accounts shall be rendered and payment made to Messrs. Bingham, Douglass & Squire, of Cleveland, Ohio.

"4. It is further agreed by and between the said parties hereto that for the purposes of this contract, one horse-power is defined to be ten square feet of heating surface in tubes.

"5. The parties of the first part agree to furnish to the party of the second part all drawings, measurements and information necessary to enable it to build a complete boiler under said letters patent No. 478,690.

"6. The said party of the second part agrees with the said parties of the first part that it will use all reasonable efforts during the continuance of this contract to promote the sale and use of the improvements covered by the said letters patent; that it will by all reasonable means in its power extend the use and sale of boilers embodying the said improvements throughout all the territory covered by the said contract. The said party of the second part expressly agrees that it will not during the term of said contract, manufacture, sell or use, or promote the manufacture, sale or use of any water-tube boilers other than the one described in the said Cook patent No. 478,690. For the

purpose of this contract a water-tube boiler is defined to be a steam boiler having tubes filled with water and upon the outside of which the heat impinges.

"7. The said second party hereby admits the validity of said letters patent in consideration of the granting of the said license; and it is further mutually agreed between the said parties that in the event that the said letters patent No. 478,690, dated July 12, 1892, be finally determined to be invalid by the United States courts of final resort, then and in that case this contract shall be void from the date of such determination.

"8. The said second party agrees to keep full and accurate accounts of all sales made by it under this contract, which shall be open at all reasonable times to the examination of said first parties of their representatives duly authorized by them in writing.

"In witness whereof the parties have hereunto set their hands on the day and year first above written.

"(Signed) MARY C. BINGHAM,
"C. L. DOUGLASS,
"C. B. SQUIRE,
"H. F. COOK,
"J. H. KING,
"C. N. SCHMICK,

"(Signed THE J. C. MCNEIL CO., "S. E. WELKER.
        "By A. M. COLE, Pres't.
        "J. B. CAMPBELL, Sec'y and Treas."

Some time thereafter, and after The J. C. McNeil Company had been making boilers under this patent, that company went into the hands of a receiver. J. B. Campbell, the defendant in this case, is now the receiver. He complains the boilers then under construction under the order of the court, and, under the same order, proceeded to carry on the business, manufacturing other boilers under the patent, but claims that he did not construct the boilers other than those under way after he became the receiver under the agreement above set forth, but says that he went into court, and, under the order of the court, upon a proper application, obtained leave to purchase a one-eighth interest of the patent, and, under that purchase, he has been operating since he obtained the one-eighth interest referred to.

This action was brought, asking him to account for all the boilers he has constructed as receiver, and he sets up the defense that he has constructed no boilers under the agreement

save the two that he completed after the receiver was appointed. After the case was appealed to this court he obtained leave to amend his pleading and set up certain facts, and, on the facts so set up, asked for a reformation of the above contract.

The contract is termed by the parties a license. In several places where they seek to denominate the character of the contract, it is called a *license,* and, in one place, it is called an *exclusive license;* and the defendant claims that the contract conveyed to the McNeil Company only a *license* to use the patented improvement. The plaintiffs claim that the contract is more than a license, and that it is a grant and conveys all the monopoly that the plaintiffs had in the patent; and that claim is based upon the language used in the contract—that it conveyed to The J. C. McNeil Company the power to manufacture, sell and use said steam boiler described in the letters patent; and the contract says that ''The license hereby granted to the party of the second part by the parties of the first part, is an exclusive license to manufacture, sell and use the said boiler and any and all improvements described in the said letters. patent.''

And the question to be determined in the case is, whether the contract is a license, or an assignment, or a grant.

Formerly in the patent law there was a difference between an assignment and a grant, which distinction was determined by the amount of territory covered. If the territory covered in the assignment was all the territory covered by the patent, it then amounted to an assignment; if the territory covered was only a part of that conveyed by the assignment, it was known as a *grant.*

This contract, reserving a part of the United States to the plaintiffs under the former classification formerly in the patent law, would be known as a *grant,* but this distinction has now and *grant.* An *assignment* is where the party owning the patent whether covering the entire territory covered by the patent or only a certain portion of the same, is now called an *assignment.* So that, in the further consideration of this case, we will not undertake to keep up any distinction between *assignment*

and *grant.* An *assignment* is where the party owning the patent, transfers all his interest and title and right to make, use, and sell, to his assignee. A *license* is where he transfers simply a use, simply a right to make and use, or use and sell, or make and sell the article made; it conveys no interest in the patent nor in the monopoly. Every patent gives to the patentee a right to make, use, and sell the article patented, and, when he disposes of this, he disposes of all that he has, and the one who obtains it from him has his entire right; while a license only operates under the rights of his licensor. So that if this contract transferred, as it purports to, all the interest that the plaintiffs had in the patent, then it can not be a license, but is an assignment. If the contract had omitted calling the interest transferred a license, there would be no room for construction of the same.

It is urged in the case, that, in the petition first filed, the parties themselves treated the contract as nothing more than a license and so denominated it. In determining, then, what was transferred by this contract, we have the language of the contract, which would make it an assignment, and also the language of the parties calling it a license, and we are called upon to say which it is.

The defendant, in his cross-petition to reform this contract, has offered testimony tending to show that the plaintiffs agreed to prosecute in their own name all suits of infringement of the patent, and has also offered evidence tending to show that The J. C. McNeil Company had no right to allow others to make the boiler containing the patented improvement; and from this testimony, which is contradicted by the plaintiffs, it is insisted that we should reform this contract so that it will appear when reformed, that the plaintiffs were to prosecute all suits for infringement, and had reserved to themselves the right to grant to others the privilege of operating under the patent. And it is claimed that if the contract is so reformed by inserting these two elements, then it will appear that the plaintiffs retained to themselves the title to the patent, and having retained the title to the patent, the defendant, The J. C. McNeil Company, is a licensee under such reformed contract. The evidence is of

that character that we would not be warranted, in law, in reforming the contract as we are asked to do. The evidence must be clear and certain before a reformation can be had. It is doubtful in our minds whether the evidence would warrant the court in believing that the agreement as to prosecutions and letting to others a right under the patent was as claimed by the defendant. He takes upon himself the burden of producing sufficient evidence to warrant the court in making the reformation. In this he has not sustained himself.

But it may be claimed that, although we can not use this testimony to reform the contract, yet it is proper testimony to consider in constructing the contract; and, if this testimony is properly in the case for such purpose, then it may be claimed that when the two elements above referred to are added to the contract, it clearly appears that the contract grants nothing but a license. And it may be considered to be the law that if parties make such a contract and write therein that the grantor is to carry on all suits for infringement, and is to grant other rights to operate under the patent, that he has then not disposed of his entire title, for he can not prosecute unless he is the owner of the title, nor can he grant licenses to others, or rights and privileges to others, under the patent, unless he is the owner; or, if he is a licensee, that his license shall run to him and to his assigns, etc.

The question arises, then, can these two elements be added to the contract by oral testimony? In determining this it is necessary to consider what the contract is as it stands. The granting part of the contract is the language used in making an assignment. Instead of the parties calling it an assignment, they have called it a license; and it has been determined in patent cases under such contracts that the contract is an *assignment* and *not a license* (*Moore Mfg. & F. Co.* v. *Hanger Co.,* 69 Fed. Rep., 998).

In *Waterman* v. *MacKenzie,* 138 U. S., 252, 256, Mr. Justice Gray says:

"Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon

the name by which it calls itself, but upon the legal effect of its provisions.''

The contract, then, as it is written, is an assignment. The law implies certain rights to the assignee under such an assignment, and one is that he is the only proper party to prosecute suits for infringement of the patent; and the other is that he has the right to grant to others a privilege to use the patent. The contract then would read, by supplying what is implied, that the defendant, The J. C. McNeil Company, was to prosecute all suits for infringement, and that he alone had the right to license others to operate under the patent. If this testimony, then, can be used as it is intended in construing the contract, it is to be used to contradict what is implied in the contract as it is written. This, we understand, can not be done.

In *Fawkner* v. *Wall Paper Co.*, 88 Ia., 169, second syllabus, it is said:

''Whatever the law implies from the language used in a written contract is as much a part of the contract as that which is expressed therein; and if the contract, found in the light of what the law thus implies, is clear, definite and complete, it can not be added to, varied or contradicted by extrinsic evidence.''

In *Bryan* v. *Duff*, 40 Pac. Rep., 936, it is said that the parol evidence is no more admissible to contradict or vary a contract implied from a written instrument than it is to contradict or vary the express terms of such instrument.

It has been repeatedly held that parol evidence can not be introduced to vary the clear and settled legal effect and meaning of a contract, nor can it be introduced to contradict or vary whatever the law implies from the contract.

It is unnecessary to cite further authorities except *Harris* v. *Oil Co.*, 57 Ohio St., 118, 125. In his opinion, in that case, Burket, C.-J., says:

''While the written instrument must be construed in the light of the surrounding circumstances, no new terms or conditions can be injected into such instrument, and no existing terms or conditions can be taken therefrom by averment in a pleading.''

And quoting from *Kellogg* v. *Larkin*, 3 Pinney (Wis.), 123, he says:

" ' 'No averments can give to an agreement character it had not, and no admission can take from it the character it had.' The effort to bind and change the construction of the written instrument in question, by averments in the pleadings as to its true construction and meaning, must therefore fail, and the instrument must be construed, and its legal effect declared from the language used when read in the light of the surrounding circumstances.''

The evidence introduced can not be used to reform the contract, nor is it competent to use the same in construing the contract; it is not admissible for such purposes.

The defendant claims that he, as receiver, did not come into the right to have and use the rights of the McNeil Company under the contract unless he adopted the same; and this is grounded upon his claim that the contract is but a license, and the license conferred upon the McNeil Company only a privilege, and that that privilege is not transferable, neither by law nor by the terms of the contract, and that he can not be held to account in this case unless he has adopted the same and estopped himself in that way from asserting that he has not, or that he could not use, this right that was personal to the McNeil Company.  But this claim is based upon the ground that the contract creates only a license.  Having found the contract to be an assignment, it created in the McNeil Company a property, and, it being a part of the property of the McNeil Company, it would, by force of his being made receiver of the property of the McNeil Company, become a part of the property in his hands as such receiver. And it is our holding in this case  that he must account to the plaintiffs as asked in the petition, and, for such accounting, the case is referred to E. A. Hershey as referee to determine the amount due the plaintiffs under the petition in this case; to report his findings of the amount due in detail at the next term of this court, and the case will stand continued for such report.

*Weed & Miller,* for plaintiffs.

*Allen & Cobbs,* for defendant.